HENRY R. DULANY, WALTER DULANY and JANE S.
DULANY, EX'RS of OLIVIA W. DULANY vs. HENRY
W. ROGERS.   HENRY W. ROGERS vs. HENRY R.
DULANY, WALTER DULANY and JANE S. DULANY,
EX'RS of OLIVIA W. DULANY.

*Substitution of a Written for a Verbal Agreement—When
Equity will Reform a Written Agreement—Conclusive Proof
required, to show that the Written Agreement does not embody
the final Intention of the Parties through a Mistake of both
Parties.*

In December, 1868, O. W. D. verbally agreed with H. W. R. to give
to the latter 300 acres of land as a *bonus* for taking W. D. into part-
nership with him in the real estate brokerage business. W. D.
then entered into the partnership. In February, 1870, a written
agreement was executed between H. W. R., W. D. and O. W. D. of
the same intent as the verbal one, but valuing the land at $6000,
and containing among other terms and stipulations, the following,
viz : " In case the said W. D. shall elect to determine the said part-
nership, or in .case by death of either party, the same should be
dissolved, then the said H. W. R. is to pay to the said O. W. D. the
said agreed price of $6000, less expenses, or the amount which may
have been realized in case of sale, less, however, the entire amount
which may have been paid to or received by the said W. D. from
the said partnership, it being understood that no interest is to be
charged." In May, 1871, the land was conveyed to H. W. R. In
May, 1873, the partnership was dissolved by the election of W. D.,
and suit at law was brought by O. W. D's executors, to recover,
under the written agreement, the difference between the amount
received by W. D., and the $6000. On a bill filed by H. W. R. to
restrain the executors from prosecuting the suit, to reform the
written agreement on the ground of mistake, and for further relief,
it was HELD :

That as it was competent for the parties to substitute for the verbal
agreement, a written one, containing terms and stipulations in re-
gard to their rights respectively upon a dissolution of the partner-
ship, and in regard to which the verbal agreement was silent; and
as the complainant failed to show that the written agreement did

not express the final intention of the parties, or that it was executed by mistake, such as would justify the Court in setting it aside, he cannot be granted the relief prayed.

If parties enter into an agreement, and through an error in the reduction of it to writing, the written agreement fails to express their real intentions, or contains terms or stipulations contrary to their common intention, a Court of equity will correct and reform the instrument, so as to make it conform to the intention of the parties.

It is incumbent, however, upon the party seeking to reform a written instrument to show by conclusive proof, that it does not embody the final intention of the parties. A Court of equity will not rectify it unless it was executed under a common mistake, both parties having done that which neither of them intended. A mistake on one side may be ground for rescinding, but not for reforming a written agreement.

CROSS-APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J.; MILLER, ALVEY and ROBINSON, J.

*H. Rozier Dulany* and *Arthur W. Machen,* for Dulany's executors.

In the absence of fraud, unless *both* parties labored under a mistake, and have done what *neither* party intended, relief cannot be given. *Kerr on Injunctions,* 55 ; *Groff vs. Rohrer,* 35 *Md.,* 333 ; 1 *Story Eq.,* sec. 151; *Gillespie vs. Moore,* 2 *Johns. Ch.,* 595 ; *Townsend vs. Stangroom,* 6 *Ves.,* 333.

It may be argued, however, on the other side, that notwithstanding there was nothing equivocal or obscure in the writing, and notwithstanding the complainant is chargeable with knowledge of the words it contained, he may yet have misunderstood its legal effect. In any view of the case, however, the observations of Lord ROMILLY, in a recent case, are very appropriate here :

"I am of opinion that this is not properly a case of mistake at all. In those cases in which agreements have been set aside on the ground of mistake, there has been a mistake as to the agreement which has been entered into. That is not the case here, for the words of the agreement are not disputed on either side; nay, more, shortly after the agreement was entered into, it was so far ratified that under it the plaintiff was actually put into possession of the farm. All those cases which have been cited during the argument, are cases where there was either a dispute and doubt as to the thing sold, or where the words of the agreement expressed certain things in an ambiguous manner, which might be misunderstood by one of the parties. In all those cases the Court has held that it must look at the evidence, and that if the mistake is sufficiently proved, the Court will then set aside the agreement. But here the words of the agreement are quite certain, and the only thing that was not, was the legal effect of certain words which it contained. Now that is no ground of mistake at all. It is a question upon the construction of an agreement agreed to by everybody concerned." *Powell vs. Smith, L. R.,* 14 *Eq.,* 89 ; and see *Selden vs. Myers,* 20 *How.,* 506; *Watkins vs. Stockett,* 6 *H. & J.,* 443, 444; 1 *Story Eq.,* sec. 157 ; *Kerr on Fraud and Mistake,* 407, 408, 413, 427-432, (350 *to* 359, *Eng. Ed.;) McElderry vs. Shipley,* 2 *Md.,* 35 ; *Beall vs. Greenwade,* 9 *Md.,* 185 ; *Carpenter vs. Jones,* 44 *Md.,* 631; *Kearney vs. Sascer,* 37 *Md.,* 264; *Slothower vs. Gordon,* 23 *Md.,* 1 ; *Mendenhall vs. Steckel,* 47 *Md.,* 453 ; *Tyson vs. Hardesty,* 29 *Md.,* 309 ; *Ellinger vs. Crowl,* 17 *Md.,* 373 ; *Cooke vs. Husbands,* 11 *Md.,* 492 ; 1 *De Gex & Smale,* 33 ; 2 *Phillips,* 338; 30 *Beavan,* 431-8 ; 1 *Drewry & Smale,* 42 ; *Lloyd & Goold,* 149 ; *(temp. Sugden ;)* 2 *Kay & John.,* 753.

It is evident that the alleged original agreement lacked that element of *certainty* which is indispensable, to justify the interposition of equity. *Beard vs. Linthicum,* 1 *Md. Ch.,* 348 ; *Stoddert vs. Bowie's Exe'r,* 5 *Md.,* 28.

Again, an agreement for the conveyance of land was required to be in writing, by the Statute of Frauds, and there were no acts of part-performance, done upon or in respect to the land, to take the case out of the Statute. In accordance with the law of England, the Maryland authorities conclusively establish the necessity of *possession*, or of some other acts done *in relation to the land which is the subject of the contract in question*, and conclusively pointing to the agreement. *Semmes vs. Worthington*, 38 *Md.*, 326 *and* 328; *Billingslea vs. Ward*, 33 *Md.*, 51, 52; *Hardesty vs. Richardson*, 44 *Md.*, 621; *Caton vs. Caton*, *L. R.*, 1 *Ch.*, 137; 2 *H. L.*, 127; *Surcombe vs. Pinniger*, 3 *De G., M. & G.*, 603, 604; *Dale vs. Hamilton*, 5 *Hare*, 381; *Clinan vs. Cooke*, 1 *Sch. & Lef.*, 40, 41; *Frame vs. Dawson*, 14 *Ves.*, 386; *Hughes vs. Morris*, 2 *De G., M. & G.*, 356; *Stroughill vs. Gulliver*, 2 *Jur. N. S.*, 700; 4 *Kent Comm.*, 451—Chancellor KENT's *text.*

The reason why possession taken is part-performance is, that in the absence of some agreement, or established relation between the parties, the party so taking possession would be liable at law as a *trespasser;* and to prevent such a fraud upon him—a fraud *with reference to the land in question*, (not fraud in general, for any breach of contract may involve fraud, and it would be fraud in this sense, to obtain purchase money without giving the consideration,) equity will inquire what the terms of the contract were, and if they are distinctly proved, and the agreement is one it is equitable to enforce, may direct it to be specifically executed. *Watts vs. Evans*, 4 *Yo. & Col.*, 579, 580; *Dale vs. Hamilton*, 5 *Hare*, 381; *Ungley vs. Ungley*, *L. R.*, 5 *Ch. Div.*, 890, *per Jessel, M. R.*

The complainant has been guilty of inexcusable *laches*. Even if his omission to *read* the agreement in his own possession, while the other contracting party was living, could be overlooked, why did he not, at least, file his bill immediately upon the discovery of what it contained, and

*then* tender a deed of reconveyance? When an action at law was brought, why did he resort to dilatory proceedings to hinder its progress, and put off filing his bill in the Court of equity until *two years and two months* afterwards? The contract was signed in February, 1870, and the bill was filed in February, 1876—after a lapse of *six years*. *Grymes vs. Sanders*, 3 *Otto*, 55; *McQuiddy vs. Ware*, 20 *Wall.*, 19.

*Albert Ritchie*, for Henry W. Rogers.

That Mr. Rogers did not understand, or consent to, the clause in question is shown:—

By the intrinsic evidence of the agreement itself. In determining such a question as this, the Court will look at the provisions to see whether they are such as an intelligent, prudent man would probably enter into. *Wisnall vs. Hall*, 3 *Paige*, 316; *Philpot vs. Elliott*, 4 *Md. Ch.*, 275–6; *Mattingly vs. Speck*, 4 *Bush*, 316; *Semmes vs. Worthington*, 38 *Md.*, 322.

Now let in the fact that this land was not worth more than $4 or $5 per acre, and it becomes impossible to believe that Rogers understood and intended the provision in question.

This is made still more apparent, by considering the surrounding circumstances, and the rights of Rogers at the time of the execution of this agreement. *He was then entitled to a conveyance of this land;* and yet this agreement would make it appear as if he agreed, not only that he should be liable at the election of Walter Dulany, to *buy* land that had been offered as a *bonus*, and at four times its value, but that at the will of said Walter, he *should pay* $6000 *for land that already belonged to him.*

Rogers had performed his part of the parol agreement, and the partnership had been in operation for fifteen months. It would have been impossible to restore Rogers to his former position; impossible to estimate his dam-

ages in a suit at law, and it would have been a fraud upon him, had Mrs. Dulany then refused to perform her part of the agreement.

Equity, therefore, would have compelled a specific execution of the parol agreement. *Browne on Statute Frauds,* secs. 448, 452–460, 463, 466; *Sugden, V. & P.*, 224, (sec. 151,) 229 (*n*); 4 *Kent, sec.* 451; *Parker vs. Smith,* 1 *Collier's Ch.*, 608, (28 *English Chancery Cases;*) *Story's Eq. Jur., secs.* 122–3; *Rhodes vs. Rhodes,* 3 *Sanfd.*, 279; *Malius vs. Brown, Comstk.*, 403; 1 *Maddock Ch.*, 301–4; *Fannin vs. McMullen,* 2 *Abb. Pr. R.*, 224; *Mundy vs. Joliffe,* 5 *Mylne & Cr.*, 167, 177; *Moale vs. Buchanan,* 11 *G & J.*, 314; *Dugan vs. Gittings,* 3 *Gill,* 138; *Philpot vs. Elliott,* 4 *Md. Ch.*, 273; *Mills vs. Milbourne,* 7 *Md.*, 315; *Semmes vs. Worthington,* 38 *Md.*, 298, 327; *Cole vs. Cole,* 41 *Md.*, 301, 304; *Hardisty vs. Richardson,* 44 *Md.*, 617, 624.

In *Wisnall vs. Hall,* 3 *Paige,* 313, the Court granted relief chiefly upon the ground that upon "taking all the circumstances of the case into consideration," the mistake was evident. "It is incredible that a man of any kind of prudence or discretion would contract for," &c. *Ibid;* and *Philpott vs. Elliott,* 4 *Md. Ch.*, 273, 275.

In *Willan vs. Willan,* 16 *Ves.*, 72, the Court held that from the very terms of the agreement, the parties could not have understood it; and one of the parties being dead, and it not being practicable to reform the agreement to make it correspond with intention, the Court ordered that it should be delivered up, and no use made of it at law or in equity.

In *Matthews vs. Tenvilliger,* 3 *Barb.*, 50, the agreement was read over to vendor, and it was discussed, but he did not understand its purport; and the Court refused specific performance. Where there is fraud on part of purchaser, or mistake and inadvertence of vendor, the purchaser is not entitled to specific performance, but the vendor is entitled to have the instrument reformed. *Ibid.*

Equity will reform where the meaning and intention are not expressed in the words used, though the words used were the ones intended. *Smith vs. Jordan,* 13 *Minn.,* 262.

Equity will grant relief, not only when the fact of the mistake is expressly established, but also, when it is fairly implied from the nature of the transaction. *Story's Equity, sec.* 162.

In *Wyche vs. Green,* 16 *Ga.,* 49, the complainant's testator had prepared the deed in which existed the alleged mistake. The Court say, that if the agreement is not as intended, it will be reformed; and "it is immaterial from what cause the defective execution of the intent of the parties originated," whether from "want of skill, or mistake, or from any other cause."

In *Mattingly vs. Speak,* 4 *Bush.,* 316, relief granted in part on the intrinsic evidence of the writing. The Court also determines that its decree was not only in accordance with the evidence, but "with those reasons and motives which may be supposed to have influenced the grantor."

In *Firmstone vs. De Camp,* 2 *C. E. Green,* 317, evidence was conflicting, and mistake denied, but, on all the circumstances relief was granted, and party enjoined. *Huss vs. Morris,* 13 *P. F. Smith,* 372; *Clark vs. Grant,* 14 *Ves.,* 519; *Moale vs. Buchanan,* 11 *G. & J.,* 315; *Cook vs. Husbands,* 11 *Md.,* 492; *Tyson vs. Tyson,* 31 *Md.,* 134; *McCloskey vs. McCormick,* 44 *Ill.,* 336; *Hunting vs. Walter,* 33 *Md.,* 60; *Semmes vs. Worthington,* 38 *Md.,* 298; *Brown vs. Bonner,* 1 *Leigh,* 1; *Blair vs. McDonnell,* 1 *Halstead Ch.,* 327; *Hamilton vs. Asslin,* 14 *S. & R.,* 448; *Lancher vs. Rex,* 8 *Harris,* 464; *Gates vs. Green,* 4 *Paige,* 355; *Rider vs. Power,* 28 *New York,* 310.

"If the proof of the mistake or omission in a written contract is sufficient to satisfy the mind of the Court, it comes up to the requirements of the law, as laid down in the case of *Beard's Ex'rs vs. Hobble, et al.,* 9 *Gill,* 430, and

will warrant the Court in reforming it," and injunction granted. *Maryland Soap Stone Co. vs. Devries*, 35 *Md.*, unreported cases; *Groff vs. Rohrer*, 35 *Md.*, 327, 340.

Equity will not permit anything unconscionable to be done, and will relieve against any "hardship or wrong not within the presumed contemplation of the parties at the time" of making their agreement. *Grigg vs. Landis*, 6 *C. E. Green*, 494–502; 2 *Story Eq.*, secs. 1314, 5, 6, 23; *Helme vs. Insurance Co.*, 11 *P. F. Smith*, 107; *Lilly vs. Fifty Associates*, 101 *Mass.*, 432.

A collateral covenant will not be enforced where it appears that is not the main purpose of the contract, but a mere incident to and security for such purpose. It is the province of equity to ascertain what is in truth the real intention of the parties, and to carry that into effect. 6 *C. E. Green, supra; W. & T. Ldg. Cas.*, 2*nd Vol., Pt.* 2, *pp.* 2022, 2024, 2039, 2046, 2047, 2053.

ROBINSON, J., delivered the opinion of the Court.

In February, 1870, a written agreement was executed between H. W. Rogers, the complainant, and Olivia W. Dulany and Walter Dulany, whereby Mrs. Dulany was to convey to Rogers a tract of land containing 300 acres, valued at six thousand dollars, as *an inducement* to take her son Walter into partnership with him in the real estate brokerage business.

The following is the clause out of which this controversy has arisen:

"In case the said Walter Dulany shall elect to determine the said partnership, or in case by death of either party, the same should be dissolved, then the said Henry W. Rogers, is to pay to the said Olivia W. Dulany, the said agreed price of six thousand dollars, less expenses, or the amount which may have been realized in case of sale, less however the entire amount which may have been

paid to or received by the said Walter Dulany from the said partnership, it being understood that no interest is to be charged."

This agreement was executed in duplicate, Rogers retaining one copy and Mrs. Dulany the other.

In May, 1873, the partnership was dissolved by *the election of Walter Dulany.* The sum received by him on account of his share of the profits of the partnership, amounted to $3001.68, and suit was brought by the executors of Mrs. Dulany under the written agreement, to recover the difference between *the amount thus received by Walter*, and $6000 the sum agreed upon as the value of the 300 acres of land.

This bill is filed by Rogers to restrain the executors from prosecuting this suit, to reform the written agreement on the ground of mistake, and for further relief.

The bill alleges that the partnership was formed under a verbal agreement between the complainant and Mrs. Dulany, some time prior to the execution of the written agreement of February, 1870—that under this *verbal* agreement Mrs. Dulany was to give to the complainant the 300 acres of land as a *bonus* for taking her son Walter into partnership with him—that the clause in the written agreement upon which the suit at law was brought, and by which the complainant was to pay to Mrs. Dulany, upon the dissolution of the partnership at the election of Walter, the difference between the sum received by him from the partnership and $6000, the price agreed upon as the value of the 300 acres of land, was inserted by mistake, and constituted no part of the original agreement.

There can be no difficulty in regard to the well settled principles of law by which this case is to be governed.

If parties enter into an agreement, and through an error in the reduction of it to writing, the written agreement fails to express their real intentions or contains terms or stipulations contrary to their common intention, a Court

of equity will correct and reform the instrument so as to make it conform to the intention of the parties. *Wake vs. Harrop*, 1 *H. & C.*, 202 ; *Beaumont vs. Bransley*, *T. & R.*, 41 ; *Ashurst vs. Mill*, 7 *Ha.; Barrow vs. Barrow*, 18 *Beav.; Scholfield vs. Lockwood*, 33 *L. I. Ch.*, 106 ; *Druiff vs. Parker*, *L. R.*, 5 *Eq.*, 137 ; *Reade vs. Armstrong*, 7 *Ir. Ch.*, 137.

It is incumbent, however, upon the party seeking to reform a written instrument to show by conclusive proof, that it does not embody the final intention of the parties ; Courts will not rectify it unless it was executed under a common mistake,—both parties having done that which neither of them intended. A mistake on one side may be ground for rescinding, but not for reforming a written agreement. *Lord Townsend vs. Stanegroom*, 6 *Ves.*, 334 ; *Mortimer vs. Shortall*, 2 *Dr. & War.*, 372 ; *Fowler vs. Fowler*, 2 *D. & J.*, 265 ; *Eaton vs. Bennett*, 34 *Beav.*, 196 ; *Fallon vs. Robins*, 16 *Ir. Ch.*, 422.

In this case the burden was upon the complainant to show that the written agreement either did not express the common intention of the parties, or that it was executed by him by mistake, such as will justify a Court of equity in setting it aside.

That the partnership began under a verbal agreement between the complainant and Mrs. Dulany, fifteen months before the execution of the written agreement; and that by it Mrs. Dulany was to convey to him the 300 acres of land, as a *bonus* to take her son Walter into partnership with him, is we think satisfactorily established.

But for this verbal agreement, it was competent surely for the parties to substitute a written agreement, containing terms and stipulations, in regard to their rights respectively upon a dissolution of the partnership, and in regard to which, the verbal agreement was silent. And if such written agreement was executed, it is but fair to presume that it expresses the final intention of the parties.

The circumstances under which the written agreement was prepared, and the reasons which led to its adoption,

are fully explained by the testimony of Mr. Gill. He says, "In a conversation with Mrs. Dulany about the partnership between the complainant and her son Walter," he found, "that while she understood there was a general agreement, none of the particulars or details of the agreement were provided for, or at least understood by her, and I told her there ought to be some agreement about it in writing.; I saw Mr. Rogers and talked the matter over with him, and afterwards talked it over further with Mrs. Dulany, making myself a variety of suggestions to each of them, and after doing this, I prepared the paper. The defect in the original agreement, was that if either of the parties died immediately after its execution, or if any dissatisfaction arose between the parties, which should lead to the termination of the partnership, or in other words, if the partnership continued only a day, Mr. Rogers would be entitled to land valued by Mrs. Dulany at $6000; seeing this condition of things, and acting not as counsel but as friend of both parties, I suggested that defect and they both as I believed understood it, and I suggested also the proper mode of remedying that defect; and hence the written agreement was prepared and executed."

It thus appears that the defects in the verbal agreement were fully discussed between Mr. Gill, the complainant, and Mrs. Dulany, and the suggestions of Mr. Gill for remedying these defects were fully explained. As thus prepared, the written agreement was read by the complainant, and then executed in duplicate, one copy being delivered to him, and it was not until the partnership was dissolved nearly three years from its execution, that objection to it was made by the complainant, on the ground that it contained terms and stipulations contrary to the real intention of the parties.

Upon such testimony as this, and there is no proof in conflict with it, we are of opinion that the complainant has failed to show that the written agreement does not express the *final intention of the parties;* or that it was

executed by *mistake* such as would justify us in setting it aside.

But then again, it is argued that the terms and stipulations of the agreement are so unjust and unreasonable as to bear upon its face *intrinsic evidence* of having been executed under a mistake. But it does not occur to us as being liable to this objection. By it, Mrs. Dulany agrees to convey to the complainant 300 acres of land valued at $6000, as a *bonus*, to take her son Walter into partnership with him. If the partnership is dissolved by the complainant, it provides, that he shall pay to Mrs. Dulany six thousand dollars for the land, less the amount received by Walter as his share of the profits of the partnership, over and above five hundred dollars per year.

On the other hand, if the partnership was dissolved by Walter, the complainant was to pay to Mrs. Dulany, the sum agreed upon as the valuation of the land, less however the share of the profits of partnership received by Walter. In other words, by the dissolution of the partnership at the election of Walter, he was to forfeit the entire share of the profits received by him.

Now, if we assume the land was *in fact* worth *six thousand dollars*, and this we are obliged to do, if we are to look merely to the face of the agreement itself, there is certainly nothing unfair or unreasonable in its provisions, so far as the complainant is concerned, because upon a dissolution of the partnership by Walter, the complainant gets the entire profits, and pays to Mrs. Dulany only a sum equal to the value of the land as agreed upon by the parties.

There is evidence however, outside of the written agreement, which makes its enforcement work a great hardship on the complainant. It appears that the tract of 300 acres, which was valued at twenty dollars per acre, as forest land lying near the Maryland and Delaware line, not valuable as woodland, because the most valuable part

of the timber had been cut off; and being a cold stiff wet white oak soil, almost worthless for agricultural purposes.   It may be difficult to say from the testimony, what this land was worth, certainly not over from *five* to *ten dollars per acre*.   It is not pretended however, that there was any false representation by Mrs. Dulany in regard to its value; she held it at twenty dollars per acre, and had in fact sold a few lots of several acres each, at that price.   And it may be said, that the complainant being a real estate broker, it is but fair to presume, he knew something about its actual value.   But the record shows that the partnership was considered a desirable one to Walter Dulany, and the complainant had good reason for supposing that it would not be dissolved by his, (Dulany's) act, considering therefore the partnership a permanent one, the valuation fixed upon the tract of land in the written agreement, was a matter of but little importance.   The happening however of a contingency not considered probable at the time of the execution of the agreement, can in no manner affect the rights of the parties under it.

But however much the circumstances surrounding this case may address themselves to the appellants, in *behalf* of *a liberal* settlement of this controversy, we are constrained to say, after a careful consideration of the testimony, that it is insufficient according to well settled principles of law, to justify us in granting the relief prayed.

The decree of the Court, therefore, setting aside the agreement of February, 1870, and enjoining the appellants from prosecuting their suit at law, and decreeing a re-conveyance of the land mentioned in the proceedings to the parties entitled to the same through Olivia Dulany, be and the same is hereby reversed, and the bill of the complainant is also hereby dismissed.

*Decree reversed, and*
*bill dismissed.*