## JAMES E. GODWIN, Next Friend of Fortunato da Conturbia, *vs.* CLAIR da CONTURBIA PATTERSON et al.

*Deeds of trust; construction; revocation. Answer. Mistake; relief in equity; mistake of law.*

A deed of trust for the benefit of the grantor for her life, with remainder to her children, or in default of issue, to such persons as she may appoint by will, etc., contained the following provision: "It is hereby further declared that it shall be lawful for the said" (grantor) "and full power therefor is hereby expressly reserved by her at the period of three years from and after the date hereof by deed under her hand and seal," etc., "to revoke the trust hereby created and thereupon and thenceforth this deed shall be void," etc. *Held,* that the deed did not necessarily mean that the right of revocation must be exercised immediately at the end of the designated term, or be permanently lost.                                   p. 495

Since the deed did not clearly and explicitly express the agreement of the parties, that the right to revoke should be unlimited after the prescribed period, it is proper for a Court of equity, upon their petition, to reform the instrument.     p. 495

Equity has jurisdiction to correct agreements which, by a mutual mistake in the statement of their terms, fail to effect the real intention of the parties.                    p. 497

A mistake in law is not sufficient ground for invoking aid of a Court of equity.                                  p. 496

Where the question arises as to the meaning of a particular combination of words, which have no defined legal signification in the connection in which they are used, equity may grant relief.                                     pp. 495-496

*Decided April 5th, 1911.*

Appeal from the Circuit Court of Baltimore City (Niles, J.).

The cause was argued before Boyd, C. J., Pearce, Thomas, Pattison and Urner, JJ.

*Morris A. Soper,* for the appellant.

*Charles J. Bonaparte,* for the appellee.

Urner, J., delivered the opinion of the Court.

The purpose of this proceeding is to have judicially construed a revocation clause in a deed of trust and to procure its reformation or cancellation upon the ground of mistake, if the terms employed, as interpreted by the Court, are found not to express the real agreement of the parties to the instrument.

On July 3, 1906, the appellees, Clair da Conturbia (Patterson), a native of Baltimore City, and Cesare da Conturbia, her husband, an Italian count, executed the deed of trust in question by which they conveyed certain real and personal estate of the former in Baltimore City to W. Hall Harris and W. Hall Harris, Jr., in trust for the benefit of the wife during her life, with remainder to her children, or, in default of issue, to such persons as she might appoint by will, or, in the absence of such appointment, to her heirs at law under the then existing laws of this State. The following provision in the deed is the one which is to be specially considered: "It is hereby further declared that it shall be lawful for the said Clair da Conturbia, and full power therefor is hereby expressly reserved by her at the period of three years from and after the date hereof by deed under her hand and seal (duly acknowledged before some officer authorized by the laws of the State of Maryland, to take acknowledgments of deeds of land in the City of Baltimore, in the State of Maryland), and recorded among the Land Records of the City of Baltimore aforesaid, to revoke the trust hereby created and there-

upon and thenceforth this deed shall be void and the title legal and equitable to the property hereby granted or then held thereunder shall, without more, vest free and clear and discharged of and from the trust hereby created in the same manner and in the same persons who would then be entitled thereto if this deed had not been made."

The deed of trust was executed in Italy and was forwarded to the trustees in Baltimore City who proceeded with the administration of the trust. Shortly before the expiration, on July 3rd, 1909, of the three year period mentioned in the deed, there was some correspondence between the countess and Mr. Harris in which her intention to revoke the trust was indicated, but she did not take steps to carry out that purpose until the spring of 1910. In the course of certain negotiations then being conducted with a view to the sale of some of the real state covered by the trust, to be consummated after its revocation should be effected, the trustees were advised by conveyancers and counsel representing prospective purchasers that doubts existed as to whether the trust had not become irrevocable by reason of the fact that the power of revocation had not been exercised immediately upon the termination of the period stated in the deed. In order to relieve the title of this embarrassment and to protect the trustees in the surrender of the estate to the countess the present proceeding was instituted. The bill was filed by the grantors in the deed and it brought in as defendants the trustees and all persons interested in the remainder, including Fortunato da Conturbia the infant son and only child of the plaintiffs. After alleging the execution and subsequent revocation of an earlier deed of trust, made by the countess in anticipation of her marriage, and which had embraced a larger estate, the bill states in substance the facts to which we have already alluded and avers that the deed of July 3, 1906, was a wholly voluntary conveyance and was executed with the understanding and intention of both the grantors and grantees, that it was revocable at any time after the expiration of the period of three years from its date; that in

such belief the countess made arrangements and entered into contracts for the reinvestment of her property in the Kingdon of Italy, it being her purpose to have the deed revoked and the estate converted into money immediately or shortly after the expiration of the period prescribed; but that owing to her son's illness and being unaware of any reason for haste in the revocation of the deed and the conversion of her property she did not come to the United States in the summer of 1909 as she had intended, but postponed her visit until the following spring. It was charged that by the true construction of the deed it was revocable at any time after three years from its date; and that under the circumstances of the case it would be inequitable for the deed to be construed to have the effect of depriving the plaintiff of all control of her property contrary to her purpose and desire at the time of its execution. The relief prayed is that the deed may be construed to have the meaning intended by the parties, or, if the Court should hold it to be irrevocable according to the language employed, that it be canceled as having resulted from a mistake of the parties. There was also a prayer for general relief.

The trustees in their answer admit the allegations of the bill, as to the facts we have mentioned, and further aver that the deed in question was executed by the grantors and accepted by the trustees upon the understanding and in the belief that it would be revocable at or after the stated period of three years. They set forth the circumstances connected with the execution of the deed, and submitted that not only are the plaintiffs entitled to terminate the trust, but that the trustees have the right to invoke the aid of the Court "to relieve them from the burden and responsibility imposed upon them by the construction now suggested which they are advised is erroneous in law and which they know to be repugnant to the purposes and intentions of the parties."

The infant child of the plantlffs answered by guardian *ad litem,* submitting his rights to the protection of the Court; and the other defendants filed answers in which the material

allegations of the bill were either expressly admited or left without denial and in which most of the respondents stated that it had always been their understanding that the deed of trust was revocable at any time after three years from its execution.

The learned Court below reached the conclusion upon the evidence adduced in the case that the intention of the parties to the deed was that it should be subject to be revoked at the option of the Countess at any time after the designated period had expired, and that as the terms of the revocation clause did not clearly express the agreement of the parties in that respect it should be reformed, so as to effectuate their real and original purpose. A decree was passed accordingly, and the pending appeal is taken on behalf of the infant defendant, whose interest in the trust have been ably represented from the beginning of the proceedings by counsel appointed by the Court.

It is perfectly manifest upon the record that the parties to the creation of the trust under consideration never contemplated that it should continue indefinitely if not revoked at the instant of the termination of the period limited in the deed. The uncontradicted evidence shows precisely the contrary understanding. Not only is the testimony of the parties explicit to that effect, but their correspondence preceding the execution of the deed shows that the practical object of the revocation clause was to restrict the duration of the trust. When the deed was prepared and sent to the Countess of Italy a blank was left for the designation of the period during which the trust should not be terminated, and the instrument remained unexecuted for some time pending communications between the Countess and Mr. Harris upon the question as to how long the trust should last. It was first suggested by the Countess that it should continue for ten or fifteen years. In reply Mr. Harris advised that in his judgment it would be better that it should exist for a longer period, but stated that he had left a blank in the deed in order that either time might be fixed. On June 22, 1906, the Countess wrote that she

thought it advisable to change the "time limit of the trust", and proposed a period of four or five years. Three days before the execution of the deed Mr. Harris received a cablegram from the Countess stating that if he would accept the trust for three years she would execute the instrument and requesting his reply. He cabled at once: "I accept three years, though think unwise."

Toward the close of the three-year period the Countess wrote Mr. Harris, under date of June 5th, 1909, that she wanted very much to be in Baltimore "next month when the present trust expires", but thought it better to wait until autumn. On the 16th of the same month she wrote again, stating that Fortunato was ill with typhoid fever and requesting that Mr. Harris would look after her business affairs "after the trust is finished" until she could go to America. The second of these two communications was received by Mr. Harris on June 30th, and on that day he replied to both, and in the course of his letter stated that the trust would not terminate merely by the expiration of the period of three years from its date, but that a deed of revocation would be necessary. "Until this shall be done," he wrote, "I understand the trust to continue, and accordingly Hall and I will manage the business as heretofore pending some further action at a time when you shall be prepared to take it up and when it may be determined what will be required for proper protection of titles to property and of parties in interest."

It was testified by Mr. Harris that at the time of this correspondence it had not occurred or been suggested to him that there was any possibility of the deed being so construed as to make it undeterminable if it were not revoked at exactly the end of the three-year period, and that the unquestionable understanding of all parties interested was that the trust could be rescinded at any time after the expiration of that period; that if he had entertained any doubts on the subject he would have forwarded a form of revocation to the Countess in order to effectuate what he knew to be her intention; and that there would have been time for such action after he

received her letter of June 5th in which she spoke of the termination of the trust.

The facts to which we have thus referred would seem to be conclusive as to the real agreement and understanding of the parties to the deed with respect to its revocability. It has been suggested, however, by counsel for the infant remainderman that the circumstances connected with the revocation of the first deed of trust, and an allusion to it in the correspondence preliminary to the second deed, should have conveyed to the Countess the idea that the later trust could only be abrogated immediately upon the termination of the prescribed period of three years. It appears that the former instrument reserved a power of revocation "after the expiration of a period of seven years from the date of the deed, or of a further period of five years," and the Countess having indicated her desire to have the trust discontinued at the end of the first period mentioned, Mr. Harris was careful to forward to her a form of revocation with explicit instructions for its execution as soon as the seven years should expire. In his letter on this subject Mr. Harris, in referring to the draft of the new deed and having in mind the longer period then contemplated for the trust, said: "The new trust must be created, on its face, for the time specified in it in order that the titles to the properties may be in proper shape, but the power is reserved to you to terminate it at the expiration of ten years, which is just as it was in the old deed of trust at the expiration of seven years."

It is evident that the provisions of the earlier deed were such as to naturally suggest the desirability of having the right to revoke it exercised punctually at the end of the first stated term so as to avoid any question as to the continuance of the trust into the succeeding specified period. But we do not think that the precautions taken to prevent the inception of another defined stage of irrevocability for the trust has any controlling significance as regards the understanding of the parties as to the very different situation under the second deed where only one period is designated during which the

trust should not be subject to recall. In view of this important difference between the two deeds we can.not hold that the reference to the first one in the letter from which we have quoted is inconsistent with the positive assurance of the parties and the convincing effect of their conduct as demonstrating their intention that the second trust should be revocable after three years and their belief that this purpose had been duly expressed in the instrument.

We can therefore entertain no doubt whatever, upon the evidence before us, that the parties to the deed in qustion intended and understood at the time of its execution that the creator of the trust should have the power to rescind it at any time after it had been in existence for the period indicated. If the deed does not reserve such a power, it is because the parties to the instrument have been mistaken in the selection of terms to express their agreement. In this aspect of the case a Court of equity can have no hestitation in granting appropriate relief. The principle is well settled that equity has jurisdiction to correct an agreement which by a mutual mistake in the statement of its terms fails to effectuate the real intention of the parties. *Aetna Indemnity Co.* v. *Railway Co.,* 112 Md. 389; *Coggins* v. *Carey,* 106 Md. 218; *Cohen* v. *Numsen,* 104 Md. 679; *White* v. *Shaffer,* 97 Md. 367; *Boulden* v. *Wood,* 96 Md. 337; *Miller* v. *Stuart,* 107 Md. 28; *Coale* v. *Merryman,* 35 Md. 382; *Dulany* v. *Rogers,* 50 Md. 532; *Bond* v. *Dorsey,* 65 Md. 316.

It has been suggested on behalf of the appellant that this doctrine is not applicable here, because, as it is argued, a misapprehension as to the meaning of language which has been used by design and not by inadvertence constitutes a mistake of law from which the parties are not entitled to be relieved. This theory, in our judgment, is not available under the conditions here presented. The questions in this case arise from doubts entertained as to the meaning of a particular combination of words in the connection in which they are used, and not as to the legal effect of language whose ordinary import is free of difficulty. The terms under con-

sideration have no defined legal significance, and if an error has occurred in the description of the power of revocation, it was not occasioned by a misconception of any rule of law. An inaccuracy in the statement of a stipulation does not always and of necessity involve a mistake as to its legal effect. This distinction is thus stated in *Abraham* v. *North German Ins. Co.,* 40 Fed. 722. "If * * * the parties actually mistake or misunderstand the principle of law applicable to the subject-matter of the contract, and reach an agreement relying upon this mistake of the law, there is no ground upon which a Court of equity can reform the contract * * * When, however, the mistake lies not in a misunderstanding of the principles of the law as controlling the subject of the contract, or the rights of the parties connected therewith, but merely in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a Court of equity will reform."

While the doctrine has been recognized in this State that a mistake of law is not a sufficient ground for invoking the aid of a Court of equity for the purposes of reformation, the cases in which it has been applied were entirely consistent with the distinction stated. In *Euler* v. *Schroeder,* 112 Md. 155, a lender of money used in the purchase of real estate by the borrower erroneously supposed that the transaction would result in the creation of a lien on the property as security for the loan; and in *Gebb* v. *Rose,* 40 Md. 387, the error consisted in the omission to observe a statutory requirement in the execution of the deed of a *femme covert.* In each of these instances the mistake was held not to justify equitable intervention. The case now before us does not come within the principle of these decisions, but is clearly entitled to the benefit of the general rule announced in *Dulany* v. *Rogers,* and other Maryland cases above cited, to the effect that: "If parties enter into an agreement, and through an error in the reduction of it to writing the written agreement fails to express their real intentions or contains

terms or stipulations contrary to their common intention, a Court of equity will correct and reform the instrument so as to make it conform to the intention of the parties."

The terms of the deed here in question are not, in our opinion, necessarily in conflict with the true agreement they were intended to represent, and it would not seem just or reasonable to construe them, in the light of this record, to mean that the valuable right of revocation reserved in the deed must be exercised immediately at the end of the designated term or be permanently lost. It may be fairly urged, however, that the language employed in the deed does not clearly and explicitly set forth the agreement of the parties that the right to revoke should be unlimited after the prescribed period, and it is the duty of the Court to afford them relief by reforming the instrument in which their intentions were sought to be expressed.

> *Decree affirmed, the costs to be paid out of the trust estate.*