[No. 4075.]

## JONES V. DAPPEN.

1. LANDS—*Growing Crops* are part of the land, and though not mentioned pass by an absolute conveyance of the lands.

2. EQUITY—*Reformation of Writings—Evidence Required.* The evidence of a mutual mistake in a conveyance of lands, executed with due form and solemnity, must be clear, convincing, and free from reasonable doubt. (26.)

The evidence examined and held to be insufficient to establish the alleged mistake. (25-27.)

3. —— *Decree—Relief.* A writing may be reformed and judgment given thereon in the same action. (27.)

*Error to Saguache District Court.* HON. C. C. HOLBROOK, Judge.

MR. JAMES P. VEERKAMP, for plaintiff in error.

MESSRS. CORLETT & CORLETT, for defendant in error.

BELL, J.

This action was brought in the Saguache county District Court by plaintiff in error to recover the value of growing crops taken by defendant in error from 240 acres of agricultural land purchased by plaintiff in error from defendant in error by warranty deed on the 27th day of June, 1911. The case was tried to a jury and resulted in a ver-

dict and judgment in effect awarding growing crops to de-
fendant in error. The parties herein entered into a written
contract on June 21, 1911, wherein the defendant in error
agreed to exchange said 240 acres of land in said county,
with appurtenances and water rights, for the undivided
interest of plaintiff in error in the Hunter Merc. Co. at
Monte Vista, Colorado, including bills receivable estimated
at $12,000. On June 22, 1911, defendant in error discovered
that the bills receivable of said company were considerably
in excess of said estimate, hence declined to be bound by said
written agreement.

The parties negotiated back and forth and made divers
modifications of the written contract up to the 27th day
of June aforesaid, when the defendant in error executed
and delivered a warranty deed to the plaintiff in error as
per written stipulations and modifications aforesaid, with-
out making any reservation whatsoever as to the future
possession of the premises or ownership of the growing
crops. In consideration of said deed the plaintiff in error
transferred his said interest in said mercantile company,
including said bills receivable, to the defendant in error,
and delivered to him the immediate possession thereof. At
the time of the first negotiations between the parties the
premises conveyed were being cropped to grain, and the
same was being irrigated. Soon after the exchange of said
properties as aforesaid, the plaintiff in error made a trip
to the state of Idaho, and left the harvesting and disposi-
tion of the crop with his agent, Mr. Olds. When the harvest
season arrived the defendant in error and the agent of the
plaintiff in error each tried to harvest the grain, and each
harvested a portion thereof; but, to avoid possible personal
conflicts, the agent of plaintiff in error withdrew from the
work, and the defendant in error was notified that if he
proceeded, it was at his peril. The defendant in error tes-
tified that he tended the crop, and looked after the same
until the 5th day of August, 1911, before he learned that

the plaintiff in error claimed the same. After the grain was cut it was stacked by the plaintiff in error. The defendant in error had the grain threshed, and sold it and the pasture for $1,246.75. The defendant in error testified that he sold both the wheat and the oats for $1.25 per hundred, which was 6 cents per hundred under the market price.

The defendant in error might voluntarily sell his own property under the market price, but if he did sell the property of the plaintiff in error below the market price, then the law would hold him for the full market price thereof.

The following, among many other stipulations, appears in the written contract:

"Party of the second part hereby agrees to sell and convey to party of the first part, by a good and sufficient deed of general warranty, free and clear of all liens and encumbrances (except the lien of the indebtedness of the San Luis Valley Irrigation District thereon, within which the following described land is included and forms a part thereof) the North West quarter of section nineteen and the West half of the South West quarter of section eighteen, all in Township forty-one North, Range ten East of the New Mexico Principal Meridian, in Saguache County, Colorado, together with all water, water rights, ditches and ditch rights thereunto belonging; but said land is and shall be subject to such rights of way for roads and ditches as are now thereon and as the same are now located; * * *."

After much negotiation for a period of seven days, and modifications of the contract, and additional exceptions agreed upon, the written agreement, with the additional exceptions, were handed over to the attorney of the defendant in error, who was instructed by the defendant in error to draw a warranty deed in accordance with the terms of the written contract and subsequent exceptions, without in any manner reserving to the defendant in error the grow-

ing crops or the possession of the land for any length of time. The deed thus drawn, executed and delivered, granted to the plaintiff in error the land in question, together with all hereditaments and appurtenances, the reversions, rents, issues and profits, and all of the estate, right, title, interest, claim and demand whatsoever of the defendant in error, either in law or equity.

The defendant in error set up an equitable defense to the action to the effect that, through mutual inadvertence and mistake, no reservation was made in said deed of the crops and possession of the premises, but that it was the mutual understanding and intention of the parties that he should remain in possession of the premises until March 1st, 1912, and have the growing crops thereon, and further averred that on account of press of time and mutual mistake of the parties to the contract, and the scrivener thereof, the agreement relative to the possession of the crops and the premises by him as aforesaid was overlooked and omitted from the contract.

These allegations were denied in the replication, and the plaintiff in error, at the trial, introduced in evidence the written contract and the warranty deed executed and delivered in pursuance thereof, and other competent evidence showing his legal title to the premises and his right of possession from the date of the deed.

The defendant in error wholly failed to support the allegations of mutual mistake contained in his answer. He testified upon the trial that he asked to have such reservations of crops and possession of the premises included by the scrivener in the written contract, but that said scrivener objected because, he said, it would require an additional sheet of paper. He further testified that he read and re-read the written contract from time to time between the 21st and the 27th days of June, the latter being the date upon which the deed was executed and delivered, and that he knew no such reservations were contained in the written

contract, and though he caused to be included in the deed reservations additional to those contained in the written agreement, he never mentioned or suggested to his attorney or to anybody else that such reservations relative to the ownership of the crop or the possession of the premises be included therein, and, therefore, no such reservations were made or included in the deed.

The scrivener, a young attorney of several years' practice, and the plaintiff in error each testified that there was no mention made of a reservation of the crops or possession of the premises, as testified to by the defendant in error, and the scrivener further testified that there was an abundance of space on the last page of the contract to include such reservations, had they been requested or desired.

There was other testimony introduced, including that of Perry Dappen and Ina Dappen, 13 and 11 years of age, respectively, children of the defendant in error, and another witness, all of whom tended to corroborate the testimony of the defendant in error to the effect that it was agreed, when the contract was being drawn, that the defendant in error should have possession of the land until the 1st of March, and the growing crops thereon, and the children, to the effect that it was left out to save putting in an additional page.

This testimony tends to disprove rather than to prove the allegation in the answer that the reservation was omitted through mutual inadvertence and mistake.

On the same day and at the same place that the contract was drawn and executed, the parties hereto had negotiations for another tract of land, wherein it was stipulated that the defendant in error should have possession of the premises then under consideration until March 1st, and the growing crops thereon; but this inchoate agreement fell through and was abandoned because of a tax complication.

If the testimony of the defendant in error and his witnesses, to the effect that the ownership of the crops and possession of the premises until March 1st were intended to be reserved in him, were pertinent, then it could have but little weight. Mr. Greenleaf, in Vol. 1, Sec. 200, of his work on Evidence, disposes of such statements as follows:

"With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. But where the admission is deliberately made and precisely identified, the evidence it affords is of the most satisfactory nature."

The evidence as to a verbal admission is not at all convincing in this case. It must be borne in mind that the defendant in error sets up affirmatively an equitable defense to the solemn provisions of a warranty deed to realty. In such a case he assumes the burden of proving that, by mutual mistake, a provision awarding him the growing crops and the possession of the property conveyed, to March 1st, 1912, was inadvertently omitted from the written instrument. It is not sufficient to prove this by a mere preponderance of the evidence, but the evidence must be most clear and convincing; *Wilson v. Morris*, 4 Colo. App., 242, 136 Pac., 248; *Loukowski v. Prior*, 46 Colo., 584-586, 106 Pac., 7; *Insurance Co. v. Smith*, 10 Colo. App., 121-131, 51 Pac., 170.

In *Insurance Co. v. Smith, supra,* where a policy of insurance in the name of E. H. Smith covered property

which belonged to his wife, Mary H. Smith, and it was sought to reform the policy on the ground of mutual mistake of fact, the court held that, unless the proof was clear, convincing and free from any reasonable controversy, the reformation could not be made.

The proper practice in a case like this is for the court to reform the written instrument by a decree of the court. The mere allegation and evidence of mistake in an action at law upon the covenants do not reform the instrument. The written agreement is still the contract between the parties until reformed. However, a reformation and judgment upon the instrument after reformation may take place in the same suit. The reformation of a written instrument is a question exclusively for the court, and when the court obtains jurisdiction for one purpose, it may grant complete relief. *Loukowski v. Prior*, 46 Colo., 584-587.

We do not know how this case properly reached a jury, but as no specific objection is urged to the form of the trial, we shall not search for one. However, the written instruments set up in the answer are controlling in this case, and no actual or theoretical change can be made therein upon a mere preponderance of the evidence, but must be made, if at all, on clear and convincing evidence manifesting certainty of error. 2 Pom. Eq. Jur,, Sec. 589; *Wells v. Crawford*, 23 Colo. App., 103-108, 127 Pac., 914.

The verdict of the jury in this case is against the weight of the evidence, and should have been set aside. Therefore, the judgment of the trial court is reversed and the case remanded.

*Reversed and remanded.*

Decided November 9, A. D. 1914.  Rehearing denied February 8th, A. D. 1915.