# WILLIAM D. HOPKINS and CARLTON M. SLAGLE

## *vs.*

## JOSEPH H. NEAL.

*Deeds: mistake; bill to annul—; burden of proof; adversary possession.*

A bill was filed to vacate and have declared null a deed for certain lands, which the plaintiff claimed by a proper construction were conveyed to him by a deed from the same grantor, or which but for a mistake should have been contained within the description of the land that was actually conveyed to him: it was: *Held,* that the burden of proof, which was upon the plaintiff, had not been discharged, and that in any event, under the facts of the case, adverse possession would have resulted in the acquisition of title to the land in dispute by the parties actually in possession of the same.                    pp. 256-258

*Decided March 7th, 1916.*

Appeal from the Circuit Court for Dorchester County. In Equity. (STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Watson Thompson* and *Randolph Barton* (with whom was *Wm. Laird Henry* on the brief), for the appellants.

*Thomas W. Simmons* and *Clement Sullivane,* for the appellee.

URNER, J., delivered the opinion of the Court.

The controversy in this case relates to the ownership of a parcel of land, containing about an acre, lying along the Choptank River, in the suburbs of Cambridge, and designated by the letter A on the accompanying diagram. The question is whether the land in dispute belongs to the appellee, Joseph H. Neal, as being included, with the lot marked on the plat by his name, in the conveyance under which he claims, or whether the appellant, Carlton M. Slagle, is entitled to it by virtue of its adverse and prescriptive use in connection with his adjoining ground to the west. All of the lots indicated on the diagram were originally embraced in a farm owned by Samuel L. Byrn and known by the name of Oakley. On July 30th, 1874, Mr. Byrn conveyed to Sophia A. Moody the parcel of land designated on the plat as the "Moody Lot," and the same day he deeded the ground indicated as the "Slagle Lot" to Alfred R. Buckner, the predecessor in title of its present owner. In 1895, after certain intermediate conveyances not exhibited in the case, William D. Hopkins, who had acquired the portion of Oakley farm not previously disposed of, conveyed to the appellee, Mr. Neal, the lot bearing his name on the plat and claimed by him to include also the ground in dispute. By this deed the northern line of the lot intended to be granted was described as running from its northwest corner, as shown on the plat, by and with the line of Joseph H. Johnson (who then owned the Slagle lot and other land on its western side), "in a northeasterly direction to the Choptank River." The written contract of sale which provided for the last mentioned conveyance described the lot as being bounded by the lands of Joseph H. Johnson on the north and west and by the Choptank River on the north and east. This description is claimed by the appellee to be broad enough to embrace the area now contested, but the deed executed in pursuance of the contract could not well be regarded as having such a comprehensive effect.

While the deed of Samuel L. Byrn, the original grantor, described the lot now owned by Mr. Slagle according to the outlines shown on the plat, and which did not include the ground in controversy, there is evidence, which we will later discuss, to the effect that the parties to the grant treated it as extending to the river, and that the successive grantees of the lot used the water front area for purposes to which it

was adapted. In 1887 the lot was conveyed to Joseph H. Johnson by a description which called for the river as the eastern boundary, and it was similarly described in Mr. Johnson's deed of December 12, 1900, to Mary J. Small, and in her deed to Mr. Slagle, which was executed sometime in the summer of 1913, the precise date not appearing in the record. On November 3, 1913, the appellee, Mr. Neal, had a survey made of the Slagle lot from the description contained in the original deed from Samuel L. Byrn, and then, as he testifies, learned the location of its eastern outlines for the first time. Upon the basis of this information he disputed Mr. Slagle's claim of ownership of the strip of land bordering on the river and, after the failure of some negotiations for a settlement, proceeded to file the pending bill of complaint.

The primary theory of the bill is that William D. Hopkins was the owner of the disputed ground at the time of the execution of his contract of sale in 1895, that it was the intent of the agreement, as shown by its terms, to sell and convey to the appellee all the land of the vendor bounded on the northeast and northwest by the Choptank River and the lot then owned by Joseph H. Johnson, that the strip along the river was within the limits thus defined, and that the description incorporated in the deed, which established the northern line of the lot conveyed as being an extension of the southern Johnson line to the river, involved a manifest and mutual mistake on account of which the plaintiff was entitled to have the deed reformed. Prior to the filing of the bill Mr. Slagle had obtained from Mr. Hopkins a conveyance of any interest the latter might be supposed to have in the land, and it was proposed by the bill that this deed be vacated.

When Mr. Neal acquired his title from Mr. Hopkins in 1895, there had been for eight years on the public land records a deed purporting to include and convey the ground in question as part of the adjoining lot on the north. It was testified by Mr. Hopkins that while the purpose of his deed was to convey all the land he actually owned in the angle

formed by the Johnson lot and the Choptank River, his understanding was that he had no title to any of the ground beyond the southern line of that lot as projected to the river, and he stated that this division between his own and the adjoining lot was marked by a wire fence. According to his view there was no error in his deed to Mr. Neal and it correctly described the entire lot which the grantor owned and could convey. Samuel L. Byrn, the common grantor from whom the titles to all the lots referred to were derived, died in 1878, but his son, William W. Byrn was a witness in the case and testified that after the sale and conveyance in 1877 of the lot now owned by Mr. Slagle, his father constructed a fence along a part of the course of the southern line of the lot as extended to the river, the remainder of the distance being occupied by a pond and by a fence previously erected. The witness stated that his father retained in his possession no part of the land lying north of the line just described, and that Mr. Buckner, who was a waterman, built a house on the lot about forty feet from the river shore. This house was shown by other proof to have stood only a few inches west of the strip of land now in litigation. Mrs. Small, who owned the Slagle lot from 1900 to 1913 testified that the southern line of the lot ran straight to the river and was marked by a wire supported by posts about a foot above the ground which she maintained for the purpose of a boundary. During her ownership, Mrs. Small said, she was in exclusive possession of the ground here sued for, using it for bleaching and painting boats, and for bathing on the beach which formed part of the area, most of it being a marsh, and that she kept in repair a wooden dike which Mr. Johnson, the preceding owner, had constructed along part of the river front to protect the shore from washing. Mr. Slagle stated in his testimony, that before purchasing the lot from Mrs. Small he asked Mr. Neal as to the location of the division line between his lot and Mrs. Small's, and Mr. Neal replied that it was by a ditch back of his buildings, and that when the witness went to the place mentioned he found a ditch

following the course of the southern line of the Small lot,
directly to the river shore. There were some posts, he said,
along the ditch, but he did not notice whether there was a
wire. After being thus satisfied as to the location of the
division line, Mr. Slagle purchased the property from Mrs.
Small and made extensive improvements.

As against the evidence thus strongly tending to prove the
adverse and continuous possession by Mr. Slagle's predeces-
sors of the land in dispute for much more than twenty years
prior to this suit, and the existence and recognition for the
same period of a defined boundary along the southern line
extending to the river, Mr. Neal and his son testified that
there had never been to their knowledge any fence along the
line mentioned by the defendant's witnesses, but they had
planted a few posts there to support a wire by which to dig
a drainage ditch, and that for some years, though not re-
cently, they had used the southern end of the lot for pastur-
age purposes, and had at various times burned the marsh
grass on the lot, and had removed some soil from it at a point
about ten feet beyond the ditch for use in grading around a
bath house on the lot to the south, and also had maintained
a sewer pipe which, while not extended into the contested
area, drained into the pond lying within its limits. As to the
conversation with Mr. Slagle in reference to the location of
the division line, Mr. Neal stated that he told Mr. Slagle it
did not run direct to the river but he did not know its exact
course.

The burden was, of course, on the plaintiff to establish the
facts upon which he claims relief in equity, but we have been
unable to find from the record that this burden has been dis-
charged. On the contrary, in our opinion, the decisive weight
of the testimony favors the theory of the defense. There is
certainly no such convincing proof of mutual mistake in the
description of the land intended to be conveyed by the deed
of 1895 from William D. Hopkins to the plaintiff as would
justify a decree for the reformation of that instrument.
*Gaver* v. *Gaver,* 119 Md. 639; *Cohen* v. *Numsen,* 104 Md.

679; *Stiles* v. *Willis,* 66 Md. 555. The grantor in the deed testifies that, according to his understanding, no error was committed, and the grantee's assertion of the opposite view in a suit brought nearly twenty years after the execution of the deed, is based upon evidence which is not conclusive in itself and is overcome by a preponderance of countervailing proof.

In contracting to sell his lot and in conveying it to the purchaser, it was the vendor's belief that he did not own and therefore could not convey any ground north of the wire fence extending to the river, which he describes as being on a straight line with the southern boundary of the undisputed portion of the adjoining property. The appellee, on the other hand, contends that his vendor was in fact the owner of the ground in controversy and that it is embraced in the description of the contract of sale, from which, as he claims, the deed erroneously deviated. Upon the evidence as a whole it might be reasonably concluded that the only mistake disclosed was in the description of the *Slagle* lot as originally granted. It is shown by the testimony to have been the intention of the grantor that this lot should extend to the river, as did the adjacent lots to the north and south, and the variance from that natural boundary revealed by the recent survey upon which the plaintiff relies was doubtless due to some error or inadvertance occurring when the lines were first located or described. The contract of sale to the plaintiff called for a lot bounded on the north and east by the river and on the north and west by the Johnson land to which Mr. Slagle has succeeded. This description was consistent with a recognition of the straight line to the river, rather than the crooked line to the north shown on the plat, as one of the outlines of the lot contracted to be sold. As the course of the straight line was northeast and that of the river was north by west, the description in the contract could correctly refer to the lot as being bounded by the river on the north and east and the Johnson land on the north and west without intending to include the disputed ground. This is not only a possible, but the reasonable construction to be placed upon

the contract, under the circumstances, and it is the only effect which can be given to the language of the deed for which the contract made provision, because the northern line of the lot conveyed is described by the deed as running with the Johnson land to the Choptank River, while the irregular platted line relied upon by the plaintiff never reaches the river and therefore does not have the required termination.

When the plaintiff made his purchase and obtained his deed the adjoining owner was in possession of the ground now in controversy under a deed within whose description it was included, and the plaintiff's grantor had recognized such possession as being supported by a subsisting and valid title. If such a decree as the plaintiff desires were passed, it would force the grantor to make a conveyance of land he disclaims having ever owned, for the purpose of reforming his deed on account of a supposed mutual mistake which he insists never occurred, in both of which positions he is sustained by the weight of the evidence. But if we were convinced that the description in the deed to the appellee did not correctly state the outlines of the land agreed to be conveyed, the plaintiff's suit would nevertheless fail, because the proof in the record justifies the conclusion that the owners of the Slagle lot have long since acquired title to the ground in suit by adverse possession.

The lower Court decreed that there was no error in the description contained in the deed of 1895 to the plaintiff, but that the conveyance included the area in controversy, and that the quit claim deed of 1913 from Hopkins to Slagle was a cloud on the title and as such should be annulled. As we are unable to adopt this view of the case it will be necessary to reverse the decree, and our decision involves a dismissal of the bill of complaint.

The exceptions to the testimony need not be discussed. Our conclusion has been based solely upon evidence which in our judgment is admissible.

*Decree reversed, with costs and bill dismissed.*