# A. PAGE REID

## vs.

## EDWARD W. HUGHLETT.

*Sale of Corporate Stock—Mistake—Fraud.*

Equity will set aside a sale of corporate stock at the instance of the purchaser, when there was a fiduciary relation between the parties, when there has been a mistake, or when there has been misrepresentation and fraud, either actual or constructive.

p. 182

To afford ground for the rescission of a contract upon the basis of mistake, the mistake must have been mutual, and not unilateral. p. 183

To justify the rescission of a contract for misrepresentation or fraud, the representation, concealment or suppression must have been of some material fact. p. 183

In cases where fraud is the basis upon which relief is sought, the burden of proof is upon the plaintiff to establish the fraud.

p. 183

A false statement, at the time of sale of corporate stock, as to the ownership of the stock, is not necessarily a fraud in law.

p. 184

That a purchaser of corporate stock from the corporate treasurer made the checks in payment therefor to the latter as treasurer, and that the latter indorsed them to himself individually and deposited them in his individual account, does not show fraud on the latter's part. p. 184

*Decided November 21st, 1919.*

Appeal from the Circuit Court No. 2 of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Ralph Robinson,* for the appellant.

*George S. Yost* and *Alfred S. Niles,* with whom were *Niles, Wolff, Barton & Morrow* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The bill of complaint which was filed in this case was for the rescission of a contract of sale, or more precisely of two contracts of sale, entered into respectively in June and October, 1916. In each case the subject matter of the sale was stock of the Auto Fender Co., ten shares of which were preferred stock, accompanied by a bonus of ten shares of the common stock. The preferred stock was sold to the plaintiff, Miss A. Page Reid, at $10 per share; the first purchase being of fifty shares, for which she paid $500, and the second, at the same price, and for the same amount of stock for which she also paid $500. These two sales are by her bill filed in September, 1918, asked to be set aside upon the ground of misrepresentation and fraud.

Equity will afford relief in such cases when the basis of the application is because of some fiduciary relation existing between the parties to the contract, or second, where there has been a mistake, or third, where there has been misrepresentation and fraud either actual or constructive. It does not appear to be seriously contended that there was any fiduciary relation existing between the parties to this suit; nor is there anything in the testimony to suggest the existence of such a relation; nor can the present proceeding be based upon a mis-

take. To afford ground for the rescission of a contract upon
the basis of mistake, the mistake must have been mutual
(*Boulder* v. *Wood,* 96 Md. 332), not unilateral, and the evi-
dence offered by the plaintiff at no point tends to show any
mutual mistake. If the plaintiff is to prevail at all, it must
be because of misrepresentation or fraud, either actual or
constructive, and such misrepresentation, concealment or sup-
pression must have been of some material fact.

The Auto Fender Co. was the owner of certain patent
rights, covering a supposed improvement in fenders to be
placed upon automobiles, and the stock of the company was
issued as full paid stock in consideration of the transfer by
the patentee to the company of all rights of manufacture. The
stock as issued gave to the patentee approximately one-third
of the total stock, for which the corporation had been capital-
ized, another third was issued to Messrs. Hughlett and Hill
as promoters, and the remaining third was placed in the
treasury, and thereafter known as treasury stock. The Auto
Fender Co. did not itself undertake any manufacturing of the
fender; but by contract the right to manufacture was granted
to the Auto Appliance Co. in consideration of certain royal-
ties to be paid upon each fender produced and sold. It is
thus apparent that the Auto Fender Co. would have use for
very little capital, actually paid in cash.

In the month of June, 1916, Mr. W. P. Lawson, an agent
of Edward W. Hughlett, called on the plaintiff, and offered
her some of the stock of the Auto Fender Co., which she
agreed to buy and did purchase and pay for. In cases where
fraud is the basis upon which relief is sought, the burden of
proof is upon the plaintiff to establish the fraud. *Hopkins* v.
*Neal,* 128 Md. 256; *Wenstrom Co.* v. *Purnell,* 75 Md. 120.
The witnesses on behalf of the plaintiff in this case were the
plaintiff herself and Mr. W. P. Lawson, the stock and bond
salesman who made the sale to her. What Mr. Lawson was
engaged to sell was stock theretofore held by Hughlett &
Hill; the stock Miss Reid bought she says she "inferred" was

some of the treasury stock. It is emphatically denied by Mr. Lawson that any representations whatever were made by him as to the ownership of the stock, at the time when he sold Miss Reid fifty shares in June. Miss Reid in detailing this transaction says that she "presumed" that it was treasury stock. The certificate for this stock was delivered to Miss Reid by Mr. Lawson, and to the question whether he made any statements to her in connection with the delivery of the stock, she says "No," and to the question whether he made any statement to her in terms as to who this stock belonged to, which she was buying, she likewise replied "No."

With regard to the second purchase of the stock in October, 1916, this was made directly from Mr. Hughlett, and in that connection the plaintiff was asked: "Did he make any statement to you at the time? A. No. He never said one word that would lead me to suppose that they were not the company's stock." And on cross-examination the plaintiff further says, that she "did not suppose that individual stock is ever sold unless it is stated, * * * that that was her understanding and inference." It is manifest from these quotations from the evidence that there was nothing in the way of actual misrepresentation as to the ownership of the stock which Miss Reid bought, or to state it in another way, no actual fraud is shown. And even if there had been a false statement as to the ownership of the stock that fact was not necessarily a fraud in law. *Cahill* v. *Applegarth,* 98 Md. 503.

The theory of constructive fraud has but two points on which to rest. These are that the checks which Miss Reid drew in payment of the two purchases, were made payable to the order of Edward W. Hughlett, treasurer, and that these checks were endorsed by him in the name of Edward W. Hughlett, treasurer, followed by his individual endorsement, and deposited in his individual account. This fact is very remote from showing even constructive fraud. There may have been many reasons, all perfectly valid and legal, why

this should have been done, and to say that they amount to fraud would be to entirely shift the burden of proof from where the law has placed it. No concealment of the transaction was made upon the books of the company; nor does it clearly appear that the previous ownership of the stock was in any way material to the closing of the contract. The entire amount of the capital stock of the company had been issued at one and the same time. There was no priority of right between different shares of either the preferred or common stock. There had been no increase in the capitalization of the company, nor could any rights inhere in the "treasury stock" over and above the rights which were enjoyed by the original subscribers. The entire case seems to be built on the presumptions, assumptions or inferences of Miss Reid, who was disappointed in not obtaining the returns from her investment which she had fondly anticipated.

The decree appealed from will accordingly be affirmed, the appellant to pay the costs.

*Decree affirmed, the appellant to pay the costs.*