JOHN F. KISER *v.* CORINNE P. LUCAS ET AL.
[No. 24, April Term, 1936.]

*Decided June 9th, 1936.*

*Vernon Cook* and *Frederick J. Singley*, with whom was *Milton B. Edelson* on the brief, for the appellant.

*William D. Macmillan* and *Lawrence Perin*, with whom were *Semmes, Bowen & Semmes* on the brief, for Corinne P. Lucas, appellee.

PARKE, J., delivered the opinion of the Court.
Mary Read Clarke engaged the services of her solicitor

to prepare a deed of trust. After receiving her instructions, the solicitor prepared the document and took it to her residence for execution. In the form in which it was drawn the grantor assigned to designated trustees certain specified personal property to be converted, and the proceeds invested so that the net income would be paid to the settlor for life, and then, accounting from her death, to pay out of said income (a) to her mother the monthly sum of $200; (b) to her adopted son, then seventeen years of age, the monthly sum of $200 to be increased and continued as by the deed of trust provided; and (c) to her cousin, Corinne P. Lucas, during her life, the monthly sum of $100.

If the net income should not be sufficient to pay these monthly sums, the payment to the cousin was to be made in full and the portions of the mother and son were to be correspondingly reduced, but if there should be any surplus income it was to fall in and become a part of the principal.

After these provisions, two paragraphs followed. They were in this form:

"At the death of my mother and at the death of my cousin the whole net income of the Estate shall be paid to my adopted son.

"The monthly income to my son of Two Hundred Dollars ($200) or a larger amount in the event of the death of my mother or cousin shall continue until he reaches the age of thirty years, at which time one-half of the principal of the Trust Estate, if both my mother and cousins are then dead, shall be paid to my son free and discharged of the Trust. If, however, one or both of my mother and cousin are still alive I desire that my Trustee shall set aside a sufficient amount to produce the annuities to them and that one-half of the Trust Estate after such deduction shall then be paid to my son, and further amounts of the principal shall be paid to him thereafter upon the death of my mother and cousin until said amounts paid to him shall reach a total of fifty per cent (50%) of the whole Trust Estate."

The document then declared that the residue of the trust estate should remain in trust and the net income be paid to the son for life, and, upon his death, to any of his children until the youngest should reach the age of twenty-one years, when the trust estate should be divided among said children or their issue *per stirpes,* subject to the exercise by the son of the power by will to divide the principal of said trust estate and the income thereof during the minority of any child in unequal amounts among his issue, provided that the principal of the trust should not be divided or paid over until the youngest of the children of the son should reach the age of twenty-one years. Should the son die without issue in the mother's lifetime, the net income was to be paid to the mother for life, and upon the death of the son without issue and of the mother, the trust was to terminate and be paid in equal portions to the settlor's three cousins, Julia, Corinne, and Katie Lucas, and their personal representatives. In addition to this summary, there were other provisions which do not require statement for an understanding of the problem at bar.

When the settlor was made acquainted with the contents of the typewritten document, she stated that it was not drawn as she had directed; and the solicitor, after discussing the matter with her, informed her that the mistake could be corrected. The correction was then made by the solicitor writing at the close of the paragraph which gave the legacy for life to Corinne P. Lucas the additional clause: "While she is unmarried and lives with my mother." No other change was made in the body of the document. Indicating the new clause by italics, the effect of the alteration is to make the provision read: "And in the same manner to pay to my cousin, Corinne P. Lucas, during her life the monthly sum of one hundred dollars ($100). *While she is unmarried and lives with my mother.*"

The settlor verified this alteration by placing her initials opposite the written words, and there was, also, included in the acknowledgment before the notary a

certification that the interlineation was made before the settlor executed the instrument. The trust deed was executed on January 12th, 1925, and a formal acceptance of the trust was indorsed at the foot of the deed on the following day.

On the day of its execution the settlor's mother, her adopted son, and her three cousins, who were beneficiaries according to the terms of the trust, were alive. The two trustees assumed the administration of the trust. One of the trustees was the draftsman of the deed of trust, but he resigned after more than a year's service, and the remaining corporate trustee continued to act. The settlor's mother died on October 13th, 1933. The settlor died on July 4th, 1934, and she was survived by her adopted son, who was of age, married, and has living an infant daughter and son. Corinne P. Lucas, a cousin, had never married, and she and the two other cousins survived.

On October 8th, 1934, these parties in interest were brought into court by a bill of complaint filed by the trustee for the purpose of having a court of equity assume jurisdiction of the trust, and, because of doubt in respect of the proper construction of the grant, determine whether the annuity to Corinne P. Lucas should be paid to her until her death or whether the prospective annuitant should not be paid the annuity because she was not living with the settlor's mother, who had died, and the entire net income of the trust should be paid to the adopted son, accounting from the death of the settlor. With all the parties in interest before the court, the matter was heard and considered. The opinion of the chancellor indicates that he weighed carefully the questions involved. He rejected the contention of the adopted son that the interlineation had created a condition precedent to the existence of a right in Corinne P. Lucas to the annuity, which defeated the annuity because of the death of the mother of the settlor before the settlor died. The chancellor's conclusion was that the annuity given was for life upon the condition subsequent that she

remain unmarried and live with the mother of the settlor; and that a part of the condition having become impossible of fulfillment by act of God, the annuity was for life so long as the annuitant remain unmarried. The decree directed that the trustee pay to Corinne P. Lucas, from the net income received from the trust estate, the monthly sum of $100 for life, and so long as she remains unmarried, accounting from the death of the settlor. No appeal was taken from this final decree of June 6th, 1935.

The decree was on the merits and was by a competent court which had jurisdiction of the subject-matter and over the parties, and, so, having been neither set aside nor reversed upon appeal, is conclusive upon the parties and their privies of all questions put in issue by the pleadings. *Vollum v. Beall,* 117 Md. 617, 622, 83 A. 1095; *Emmert v. Middlekauff,* 118 Md. 399, 403, 404, 84 A. 540; *Christopher v. Sisk,* 133 Md. 48, 50, 51, 104 A. 355; *Wiley v. McComas,* 137 Md. 637, 639, 640, 113 A. 98; *Walzl v. King,* 113 Md. 550, 556, 77 A. 1117; *Stouffer v. Wolfkill,* 114 Md. 603, 609, 80 A. 300; *Elkton v. Sweet,* 141 Md. 614, 618, 119 A. 510. Compare *Orrick v. Fidelity & Deposit Co.,* 113 Md. 239, 251, 77 A. 599.

As between the parties, the decree must, therefore, be accepted as conclusive that, by the terms of the grant, Corinne P. Lucas is entitled to the monthly payment of $100 out of the net income of the trust estate so long as she lives and remains unmarried. Having been a party to the bill of complaint to have this inquiry settled by a construction of the grant, the adopted son would unquestionably be bound by the decree of construction so long as the deed of trust is effective. *Supra.* The son, however, filed a bill of complaint against the acting trustee and Corinne P. Lucas, on August 15th, 1935, in which it is averred that neither the original draft of the deed of trust nor its modification by the interlineation mentioned expressed the true intention of the settlor, which was asserted to be that the monthly payment of the sum of $100 to Corinne P. Lucas was in compensation

for her services as a companion to the mother of the settlor, and that the payment was not to be made unless the services were rendered. The failure of the deed of trust to express this asserted intention is ascribed to the solicitor of the settlor, and, on the theory of mistake in changing the original terms, the relief prayed is that "the deed of trust be reformed by inserting appropriate language to indicate that the $100 a month is a compensation for services as companion to the mother of the grantor, and to continue only so long as the said services were actually rendered."

It is objected that this bill of complaint cannot be entertained because the decree in the first bill of complaint makes the equity of the second bill *res judicata*. The difficulty with this position is twofold. The first bill of complaint was instituted by the trustee on the theory that the deed of trust was a complete instrument whose terms required construction for the guidance and protection of the trustee. The equity of the second cause, however, was in the allegation by the son that the deed of trust was defective in failing to express the intention of the settlor through the mistake of her solicitor in its drafting.

It appears from the record that the testimony, in the first cause, of the solicitor who drew the original deed of trust and made the alteration, was taken subject to exception, and that the portion of the testimony which related to the statements and declarations before and at the time of the execution of the declaration of trust was later excluded. While this testimony is the evidence which the son depends upon to establish mistake under the allegations of the bill of complaint at bar, the chancellor excluded it on the theory that the construction of an entire instrument was the subject-matter of the litigation, and not the rectification of a document which, because of mistake, imperfectly declared the trust intended by the settlor. The effect of the chancellor's ruling is to limit his decision to the construction of the deed of trust as it was executed, since, on the issue made by the plead-

ings, the point of mistake was not submitted. A question cannot be said to be *res judicata* when it was neither attempted to be raised nor could have been raised according to the pleadings as they were presented to the chancellor. *Supra; Caird v. Moss,* L. R. 33 Ch. Div. C. A. 22, 28-30, 35; *Northern Assurance Co. v. Grand View Building Assn.,* 203 U. S. 106, 107, 27 S. Ct. 27, 51 L. Ed. 109.

Although it would appear that there was no adjudication of the subject-matter of mistake, the questions of election and waiver and its effect on the rights of the son remain. *Supra.* Under the first proceedings in equity, the jurisdiction of the court of equity was invoked for the purposes of the construction of the declaration of trust and of obtaining general relief. The trust was not wholly executed, but was largely executory and active. When equity assumed jurisdiction for the purpose of construction, it would retain its jurisdiction until the trust was at an end, whether the trust continued under the instrument by which it was created or under this instrument after its reformation to correct a mistake. *Ætna Indemnity Co. v. Baltimore S. P. & C. R. Co.,* 112 Md. 389, 397, 76 A. 251; *Coggins & Owens v. Carey,* 106 Md. 204, 216-219, 66 A. 673; *Conner v. Groh,* 90 Md. 674, 683, 684, 45 A. 1024; *Maryland Home Insurance Co. v. Kimmell,* 89 Md. 437, 441, 442, 43 A. 764; *Second National Bank v. Wrightson,* 63 Md. 81, 85; *England v. Gardiner,* 154 Md. 510, 513, 514, 142 A. 625; Code, art. 16, secs. 173, 179.

So, in the original proceedings begun by the trustee, the son, who, with the other living beneficiaries was made a party defendant, could have by answer set up mistake in the declaration of trust, and, if proved, have a rectification decreed, since this was wholly a matter in equity. The point is taken that the mistake was not known by the adopted son until the testimony of the solicitor was given; but, if it be conceded that the son did not earlier know, or should not have earlier known, the facts, he did know them when the solicitor testified in the first cause, and it was then not too late for steps to have been taken in the

original cause to have obtained a stay until the question of rectification had been presented, heard, and determined. *Supra;* Code, art. 16, sec. 17; *Miller's Equity Procedure,* pp. 241, 242; *Daniell's Chancery Pl. & Pr.* (6th Ed.) *1623; 53 *C. J.* 992, 993, sec, 149; *Godwin v. Da Conturbia,* 115 Md. 488, 80 A. 1016; *Selder v. Winegar,,* 70 Colo. 574, 203 P. 667; *Gilbert v. Williams,* 157 Mich. 226, 121 N. W. 739, 740; *Williamson v. Brown,* 195 Mo. 313, 93 S. W. 791; *Hook v. Craighead,* 32 Mo. 405; *Gallup v. Bernd,* 132 N. Y. 370, 30 N. E. 743; *Moore v. Moore,* 151 N. C. 555, 66 S. E. 598; *Jones v. Dappen,* 27 Colo. App. 21, 146 P. 118.

So, during the course of the first suit, the adopted son was clearly advised that he must make a choice between his rights under the deed of trust as executed by the settlor and his rights under a reformed deed of trust. He could not at one time insist that his rights were conferred and vested under the declaration of trust as executed, and, if the decree were adverse, at a later time attempt to retrieve his failure, by setting up the same claim of right under the declaration of trust after it had been rectified by correcting the instrument because a mistake in its preparation had made it fail to express the real intention of the donor. In short, the son had to elect whether he would continue to assert his rights under the executed instrument or under a reformed declaration of trust. He chose to test his rights according to the provisions of the executed declaration of trust, and lost. His conduct was a waiver of a right dependent upon the terms of a reformed instrument. *Peters v. Bain,* 133 U. S. 670, 695, 10 S. Ct. 354, 33 L. Ed. 696; *Washburn v. Great Western Ins. Co.,* 114 Mass. 175; *Thomas v. Joslin,* 36 Minn. 1, 29 N. E. 344; *Steinbach v. Relief etc. Co.,* 12 Hun (N. Y.) 640, affirmed 77 N. Y. 498, 33 Am. Rep. 655; *Miller on Construction of Wills,* sec. 333; *Bower's Estoppel by Representation,* pp. 225-227, 232-241, 340-342.

The donee may have not known, until the testimony of the solicitor, of the circumstances which he claims require a reformation to correct a mistake, but this initial igno-

rance does not make his later decision to put his entire reliance upon the terms of the deed of trust any the less a decisive act, which, taken with a knowledge of his rights and of the fact, constituted an election and waiver. *Sanger v. Wood,* 3 Johns. Ch. (N. Y.) 416; *Washburn v. Great Western Ins. Co.,* 114 Mass. 175, 176; *Connihan v. Thompson,* 111 Mass. 270, 272; *Butler v. Hildreth,* 5 Metc. (Mass.) 49, 50-53.

If it be assumed that the plaintiff is not barred by waiver from prosecuting the second suit, the first question is whether or not a voluntary assignment of personal property by a settlor for her use and benefit during life, and then over upon a further trust for the use and benefit of donees as in the declaration of trust provided, will be reformed, after the settlor's death, at the instance and for the benefit of one of the donees, and adversely in respect to another. According to *Pomeroy on Equity* (4th Ed.) sec. 2100, the rectification in such a case is not generally awarded, but is enforced in some jurisdictions to correct a disposition which is clearly proved to have failed through mistake to carry out the donor's intention. On principle it would seem that if a mistake exist within the rule, it should be cured even if the settlor be dead, provided he died without having confirmed the grant in the form in which it was executed, and all the conditions exist for the reformation of the deed of trust.

The rule is soundly stated in *Kerr on Fraud and Mistake* (6th Ed.) at pages 621, 622: "A voluntary deed cannot be reformed, except wth the consent of the settlor, if it fails to carry out the intention of the parties. If the case be that he has made a mistake, no amount of evidence, however conclusive, proving that he made a mistake, will justify the court in compelling him to introduce a clause into the deed, which he does not choose to introduce, although at the time of the execution he might have wished to have done so. On the other hand, the court will exercise caution in rectifying a voluntary settlement upon the evidence of the settlor alone. But if a man executes a voluntary deed declaring certain trusts

and happens to die, and it is proved from instructions or otherwise that the deed was not prepared in the exact manner which he intended, the deed may be reformed and those particular provisions necessary to carry his intention into effect may be introduced." See 21 *Halsbury's Laws of England,* pp. 12, 20, sec. 36; pp. 23, 24, sec. 44; 3 *Seton's Judgments and Orders* (7th Ed.) 2237. Although there is weighty authority to the contrary *(a)*, the rule accepted in this jurisdiction is as stated in the quotation given, and the court will not adopt another. *Milligan v. Pleasants,* 74 Md. 8, 12, 13, 21 A. 695; *Coale v. Merryman,* 35 Md. 382; *Lewis v. Lewis,* 140 Md. 524, 527, 118 A. 65; 3 *Williston on Contracts,* sec. 1547, p. 2744; *Godwin v. Da Conturbia,* 115 Md. 488, 80 A. 1016. See *Showman v. Miller,* 6 Md. 479; *Hesson v. Hesson,* 121 Md. 626, 629, 630, 89 A. 107; *Hopkins v. Neal,* 128 Md. 251, 256, 97 A. 436; *Boyle v. Maryland State Fair,* 150 Md. 333, 340, 134 A. 124; *White v. Shaffer,* 130 Md. 351, 359, 360, 99 A. 66; *Stiles v. Willis,* 66 Md. 552, 8 A. 353; *State v. Gaver,* 115 Md. 250, 260, 80 A. 891; *Mutual Life Ins. Co. v. Metzger,* 167 Md. 27, 29, 30, 172 A. 610; *Contra: (a) Bispham on Equity* (8th Ed.) sec. 194; *Restatement of Law of Contracts,* vol. 2, sec. 506, p. 974; *Restatement of Law of Trusts,* vol. 2, sec. 333 (e), pp. 1008-1010.

The court, however, will only act upon absolute proof of error and of actual intention *(a)*. So, if the mistake be established, no relief will be granted unless the precise form to which the deed of trust ought to be altered is definitely shown. *Philpott v. Elliott,* 4 Md. Ch. 273, 275; *Milligan v. Pleasants,* 74 Md. 8, 13, 21 A. 695; *Coggins & Owens v. Carey,* 106 Md. 204, 217, 218, 66 A. 673; *White v. Shaffer,* 130 Md. 351, 360, 99 A. 66; 21 *Halsbury's Laws of England* (2nd Ed.) 22; *Fowler v. Fowler* (1859) 4 De G. & J. 250; *Bradford (Earl) v. Romney (Earl)* (1892) 1 Ch. 475, 486; *(a) Mutual Life Ins. Co. v. Metzger,* 167 Md. 27, 30, 172 A. 610; *England v. Gardiner,* 154 Md. 510, 142 A. 625; *Miller v. Stuart,* 107 Md. 23, 68 A. 273; *Dulany v. Rogers,* 50 Md. 524, 533; *Stiles v. Willis,* 66 Md. 552, 8 A. 353; *Farmville Ins. etc. Co. v.*

*Butler,* 55 Md. 233; *Second Nat. Bank v. Wrightson,* 63 Md. 81; *Boulden v. Wood,* 96 Md. 332, 336, 53 A. 911; *Keedy v. Nally,* 63 Md. 311; *Hilton v. Tyrell,* 93 Md. 657, 49 A. 926; *Dixon v. Dixon,* 92 Md. 432, 48 A. 152; *Gaver v. Gaver,* 119 Md. 634, 87 A. 396; *Hesson v. Hesson,* 121 Md. 626, 89 A. 107; *Dall Co. v. Butcher,* 135 Md. 25, 30, 107 A. 527; *National Ins. Co. v. Crane,* 16 Md. 260, 270, 77 Am. Dec. 289; *American Automobile Ins. Co. v. Shapiro,* 151 Md. 383, 390, 135 A. 163; *Kearney v. Sascer,* 37 Md. 264, 267, 280; *Coale v. Merryman,* 35 Md. 382, 383; *Hopkins v. Neal,* 128 Md. 251, 256, 97 A. 436.

With this burden of proof on the party seeking rectification, the proof on this record is not of the quality required. There is no element of fraud in the alleged mistake. Everything was done in the utmost good faith. The settlor first gave her instructions to her solicitor, who prepared the deed of trust in conformity with what he understood were her directions. By the original draft, the gift was to the annuitant for life, and the various contingencies which might arise upon the termination of the annuity by death were the occasion of appropriate provisions in subsequent paragraphs of the draft. The solicitor took the paper to the residence of the settlor, and, when it was read, she stated that the solicitor had not fully understood her intention with reference to the gift to the annuitant. The solicitor, who gave the only testimony of what occurred, stated that, after the matter was discussed, he informed her that the desired change could easily be made by an interlineation. After the interlineation had been inserted and verified by the settlor writing her initials on the margin opposite the alteration, the instrument was then duly signed, witnessed, and acknowledged. The solicitor testified that the deed of trust, as modified by the interlineation, was in conformity with the settlor's wishes and instructions. *McElderry v. Shipley,* 2 Md. 25, 35. The trustees forthwith entered upon the administration of the trust, and, from the date of the execution of the instrument on January 12th, 1925, until her death on July 4th, 1934, there is no testimony

that the settlor did not continue wholly satisfied with the deed of trust as a perfect expression of her intention. Since she knew its corrected terms from the day of its making, and since the testimony further established that she executed the declaration of trust, with the advice of her legal advisor, after careful consideration and ample deliberation, the instrument must be presumed to be in conformity with the intention of the settlor.

The settlor's long acceptance counts heavily in favor of the assailed document, because a donee under a voluntary settlement can have no greater right to rectification than the settlor, while living could have had. *Dall Company v. Butcher*, 135 Md. 25, 30, 107 A. 527; *Citizens' Ins. Co. v. Conowingo Co.*, 116 Md. 422, 434, 82 A. 372; *Lyon v. Balthis*, 24 Ohio App. 57, 155 N.E. 815, 816.

On principle this is true of a voluntary donee, no matter when his right or interest arose. Here the rights of the adversary donees vested in interest on the execution of the deed of trust, although their right did not vest in enjoyment until the death of the settlor. So, the right of one gratuitous donee against another for reformation of the deed of trust of the common donor depends upon the right of the donor to a like rectification.

The evidence offered in support of rectification is that of the solicitor, who testified: "I won't undertake to give the exact words of Mrs. Clarke, but she said, that is a mistake as to the $100 a month to my cousin Corinne; I had in mind that that would be an allowance for services for living with my mother as a companion. * * * and I want it put in so that it appears that it is while Corinne is unmarried and while she is living with my mother. * * * Mrs. Clarke said that the $100 is to be paid to her before the $200 to my mother and to my adopted son, if it isn't sufficient to pay all, because that would be due her as a salary and must be paid first." The solicitor testified that he could not give the exact words of the settlor. His testimony was given after more than nine years. What he wrote on that occasion to make the instrument conform to the settlor's intention more

accurately reflects the actual intention of the settlor at the time than the recollection of spoken words; and he testified further that, after he had made the desired alteration, the deed of trust conformed to her wishes and instructions. The motive for the gift was to compensate the cousin for her services in living with the settlor's mother as a companion. The gift, however, was an integral thing. It was first written as an annuity for life. Under the settlor's eye and direction it was changed to an annuity for life while the donee remained unmarried and while she lived with the settlor's mother.

The rectification made conformed to the settlor's intentions as she expressed them to the solicitor. The solicitor effected the desired alteration by interlining, after the creating of the annuity, the phrase "while she is unmarried and lives with my mother." The effect was to introduce this limitation upon the life estate of the donee into every subsidiary and subsequent provision which had reference to the annuity of the donee. The original annuity for life thus became one subject to a condition subsequent or conditional limitation.

The contention is made that the solicitor should have incorporated in the deed of trust a clause which would have stated that the purpose of the annuity was to assure the continuation of an existing arrangement under which the annuitant acted as companion to the mother of the settlor, and directing that the annuity was to continue only as long as it might be necessary for the annuitant to render such services. If this were the intention of the settlor, it was unexpressed. The declaration of trust is a complete and plain denial of the intention ascribed to the settlor. There is no testimony from which it clearly appears that the settlor, in her oral instructions to her solicitor, gave any utterance with reference to the contingency of her mother's death before that of the settlor, in any wise in conflict with the provisions of the deed. In this state of the proof, with no evidence of artifice or fraud, the court will not assume an intention to exist in contravention of the terms of the settlor's solemn deed.

Ambiguous and vague statements are not sufficient to defeat what the testimony shows both the settlor and the solicitor agreed was a correct written embodiment of the settlor's intention.

For the reformation of the deed of trust, equity exacts that a clear intention be certainly and definitely declared. If this were not true, there would be no standard by which the writing could be rectified. *Supra; White v. Shaffer,* 130 Md. 351, 360, 99 A. 66. As was said for the court by Judge Alvey in *Stiles v. Willis,* 66 Md. 552, at page 556, 8 A. 353, 354: "The court will never, by assuming to rectify an instrument, add to it a term or provisions which had not been agreed upon, though it may afterwards appear very expedient or proper that it should have been incorporated; and, as said by Lord Chancellor Eldon in *Beaumont v. Bramley,* 1 Turn. & R. 41, in deciding cases of this nature, great weight must be given to what is reasonably and properly sworn to on the part of the defendant; because it must be a very strong case that would, even in a recent transaction, operate to overturn or vary a solemn instrument, but, after the lapse of a long time, it must be a case that leaves no sort of reasonable doubt in the mind of the court; and more especially is this so in cases where considerable time has elapsed, and the parties to the original transaction have died, before application is made for relief. See *Watkins v. Stockett's Admr.,* 6 H. & J. 445; *Showman v. Miller,* 6 Md. 485; *Gillespie v. Moon,* 2 Johns. Ch. (N. Y.) 585." See also *Gebb v. Rose,* 40 Md. 387, 394; *Grove v. Todd,* 41 Md. 633, 640; *Baker v. Baker,* 94 Md. 627, 633, 634-636, 51 A. 566; *Euler v. Schroeder,* 112 Md. 155, 160, 76 A. 164; *Elling v. Travers,* 162 Md. 597, 606, 607, 160 A. 789; *Godwin v. Da Conturbia,* 115 Md. 488, 495-497, 80 A. 1016. See *Oxenham v. Mitchell,* 160 Md. 269, 279-281, 153 A. 71.

It follows that the intention of the settlor with respect to the contingency of her mother's death before the settlor's must be found in the terms of the deed of trust. As was said in *Perry on Trusts* (7th Ed.), sec. 184,

pp. 311, 312: "It is to be observed, however, that the ignorance or mistake which entitles a party to relief must be as to some matter of fact; and that mistake or ignorance of the law, or of the consequences that will follow from the conveyance, will not entitle the party to relief. This rule is established by reason of the greater danger of abuse that would arise if parties were allowed to reclaim their property upon allegations that they were ignorant of the law, or mistook the consequences of their acts. Thus, if a party has full knowledge of all the facts, and intends to do the acts or execute the instrument in question in the form in which they are executed, he cannot have relief because he was ignorant of or mistook the law, or because the consequences which legally and naturally follow from the transaction are different from what he expected. But if there is a mistake in the instrument itself, and it contains what was not agreed or intended, or does not contain all that was agreed and intended, to be in writing, equity will give relief." *Pomeroy's Equity Jurisprudence* (4th Ed.), sec. 843.

It is unreasonable to reject the contemporaneous interpretation by the experienced solicitor of the meaning of the settlor's language, and her adoption, after consideration, of this interpretation, for a subsequent interpretation which is designed to deprive the donee of the annuity by ascribing to the settlor the intention of making the survival by the mother of the settlor's death, and the service of the donee while unmarried as a companion to the mother, conditions precedent to the receipt of any sum by the donee. If it were granted that the testimony of the solicitor were susceptible of this construction, a court, under the circumstances of this record, would require more than the uncorroborated version of a single witness' testimony to rectify a settlement, when the settlor is dead, and one of the volunteer beneficiaries seeks a rectification that is adverse to another beneficiary whose conduct or good faith is not impugned. *Bonhote*

*v. Henderson* (1895), 1 Ch. 742, 2 Ch. 202; *Stiles v. Willis*, 66 Md. 552, 555, 556, 8 A. 353.

The settlor had knowledge of all the facts, and had taken advice before she executed the corrected draft. When she read the instrument and executed it, she must be presumed to have known and understood its contents, and, no matter what her antecedent purpose was, the testimony here is that she found her intention satisfactorily expressed in the corrected draft of the deed of trust. *Hall v. Hall*, L. R. 8 Ch. 430, 437-439. If she had previously entertained or expressed any other intentions, they were, therefore, deliberately abandoned so far as they may have been inconsistent with the terms of the deed of trust. *Boulden v. Wood*, 96 Md. 332, 337, 53 A. 911. The solicitor here accordingly made no mistake in expressing the settlor's intention in terms of the corrected draft of the deed of trust. So, there is no basis for reformation on account of a mistake of fact. The settlor is assumed to have executed the deed of trust upon the basis of a knowledge of the general law. So, a mistake of general law by the settlor cannot be set up by one beneficiary of the deed to procure a rectification of the deed which would defeat the right or interest of another beneficiary who had not induced the mistake of law. A donee cannot say of his settlor, who understood what the words of the deed of trust were, that she was under a mistake which would entitle her or her beneficiary to relief, because the settlor acted on a mistaken view of the effect on the annuity given of a general rule of law with respect to conditions subsequent or to conditional limitations. It is for the general good that a person is assumed to contract and to give with a knowledge of the general rules of law. The application of this principle is particularly appropriate when the person is proceeding under the advice of her solicitor, who is not shown to have misled her, and her voluntary action is not induced by the beneficiary or her representative. *Midland etc. Ry. v. Johnson*, 6 H. L. Cas. 798, 811; *Stewart v. Stewart*,

6 Cl. & F. 911; *Rogers v. Ingham,* 3 Ch. Div. 351, 356, 357; *Stewart v. Kennedy,* 15 App. Cas. 108, 121, 122.

So, on this record, the settlor must be charged with the knowledge that where a condition subsequent or limitation is void by reason of its being impossible, repugnant, or contrary to law, the estate becomes vested in the first taker discharged of the condition or limitation. The performance of a condition subsequent may be dispensed with, if the nonperformance is caused by an act of God, such as death. As stated by Mr. Tiffany, the grantee "is relieved from the necessity of the performance of the condition, not because performance is impossible, but rather because, on a reasonable construction of the condition, it was not intended to call for performance in the contingency which has arisen. For instance, in the case of a devise subject to a condition that the devisee, after testator's death, live with and care for a certain relative who, as a matter of fact, does not survive testator, it is, it is conceived, not the impossibility of living with and caring for a deceased relative which dispenses with the condition, but rather the consideration that the condition cannot have been intended to apply in such a contingency." *Tiffany's Real Property* (2nd Ed.), vol. 1, sec. 81 (b), p. 277; *Pollock, Contracts* (Williston Ed.), 534. So, in *Miller's Construction of Wills,* it is stated: "Thus where a testator left to a brother L a sum of money with which to take care of their brother R 'while he shall live and bury him at his death,' and R died before testator, it was held that the condition annexed to the gift was a condition subsequent, and its performance being made impossible by the act of God, the legatee L took the bequest unconditionally." Section 309, p. 871.

In *Burchett v. Woolward,* 1 Turn. & Rus. 442, 37 English Reprint, 1170, where, as stated in 1 *Roper on Legacies,* *784, an annuity was bequeathed to A. B. as long as she should continue in the service of the testator's wife; and, if she should so continue in such service, the annuity was to be continued to her quarterly, free of all

deductions, to cease in case she should leave the service of his wife until the decease of his wife. The testator's wife died in his lifetime. Sir T. Plumer, M. R., held that A. B. was entitled to an annuity during her life. 2 *Jarman on Wills* (6th Ed.), *850; 2 *Cruise's Digest,* *32. Similarly in *Hammond v. Hammond,* 55 Md. 575, 577, 582, 583; *Ellicott v. Ellicott,* 90 Md. 321, 332, 45 A. 183; *In re Stickney's Will,* 85 Md. 79, 102, 36 A. 654; *Miller v. Negro Charles,* 1 G. & J. 390.

The settlor survived her mother almost nine months. During this period, as well as during the much longer period from the date of the deed to her mother's death, the settlor had the right to revoke the trust to the extent of ten per centum in value of the principal of the trust estate, and to have the deed reformed for mistake. There is not any evidence that during this time her acquiescence was anything other than an advised and complete acceptance of the deed as the correct expression of her intention when it was made.

These circumstances confirm the conclusion that the bill of complaint was properly dismissed.

> *Decree affirmed, with costs to be paid by the appellant.*