HOWARD ET AL. *v.* SEVERN ET UX.

[No. 89, October Term, 1953.]

188

*Decided March 17, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John E. Clark* and *Wilmer Cronin* for the appellants.

*G. Howlett Cobourn* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree awarding a certain parcel of land in Harford County to the appellees, on a bill of complaint filed December 5, 1952, alleging that a conveyance of the parcel by the County Commissioners to the Howards on July 17, 1950, was a result of fraudulent misrepresentation. After answers had been filed and testimony taken, the Chancellor delivered an opinion in which he stated that the conveyance was either in furtherance of a plan to embarrass the Severns and defraud them of their rights, or was the result of a mistake, and under either view the Severns were entitled to relief and, in effect, a reformation of the deed.

The testimony shows that prior to 1950 the Severns, the Howards, Vanneman and Gabler owned adjoining lots facing the Bush River to the northwest. There was a platted but unopened driveway between the lots and the river. A public highway known as the Washington Road ran to the river in a westerly direction, cutting a corner of lot 4 for a distance of about 13½ feet. Severn owned lot 4 and part of lot 5, and thus had access to the road by means of the 13½ foot corner. Howard, owning the rest of lot 5 and part of lot 6, had no access to the road, nor did Vanneman, owning lot 7 and part of lot 6, or Gabler, owning lots 8 and 9. The triangular piece of land between these lots and the Washington Road was owned by the County, and formerly used by it for a parking lot, but it had become overgrown and unsightly, and was seldom used by the public. All of the lot owners mentioned had used it for many years as a means of access to their respective properties.

Early in 1950, Howard approached all the other owners with a suggestion that they buy the triangular piece from the County. Vanneman and Gabler agreed, and the three of them employed counsel, who obtained an agreement of sale from the County Commissioners at a price of $300. Severn refused to join in the application or employment of counsel, but testified that Howard

told him he would give him the portion of the land in back of his lot, to the road. Severn specifically testified, however, that he never authorized Howard to act for him in the matter, and never assumed any responsibility for costs or expenses. Severn never communicated with the County Commissioners, or dealt with anyone except Howard. He testified that Howard told him he (Howard) would give him the land in back of his (Severn's) lot, if he would agree to an adjustment of the division line between his land and the Howards', which had never been located by a survey. Howard testified that Severn was to get the land in back of his lot when there was an agreement as to the line between their properties; that Severn later agreed to and signed a deed and cross-conveyance on the basis of the existing boundary line.

A great deal of the testimony at the trial was directed toward the fact that in the resolution of the County Commissioners authorizing the sale, the name of Severn was typed in after the first typing and later deleted. We find no sinister implication in this fact. Both of the two Commissioners who testified in the case said they understood that all the lot owners were to get the land in back of their lots as a means of access, but the application was in the name of only three of the four owners, and the ultimate division was to be by mutual agreement. Three deeds were executed and recorded. The deed to Howard included the land in back of Severn's lot. But there is no evidence that the situation was misrepresented to them, or that there was any mistake.

The best evidence of Howard's good faith in the matter is that a deed and agreement was prepared by the attorney for the three grantees, according to the existing, visible division lines, and on August 11, 1950, it was executed by all the parties, including Severn, except Mrs. Severn. A Mrs. Martin joined for the purpose of conveying to Severn, free of charge, a strip with a frontage of six feet on the road, in order to give him better access to his garage.

The testimony is that Severn, after he signed this deed and agreement, decided that "something was being put over on me," and told his wife not to sign, although she had told other witnesses she was entirely satisfied. She did not testify at the trial, but two witnesses testified she told them she was willing to accept the existing line. Severn testified he thought "something was wrong" when he realized that Mrs. Martin was giving him a strip of her property, although Howard testified he only obtained Mrs. Martin's consent because Severn had demanded a further rectification of the lines. Subsequent inquiry, and a survey Severn had made, showed that the true division line between his land and Howard's, based on the various deeds, was somewhat farther to the southeast than the visible line, so that Howard's buildings encroached a few feet on Severn's property. An extension of the true line would give Severn about 30 feet more frontage on the road than called for in the deed and agreement.

We think the evidence shows that the deed and agreement of August 11, 1950, correctly represented the agreement of the parties. The plat from which it was drawn contained a notation by the surveyor that "this plat shows correctly the present holdings according to the agreement of the parties." Severn was shown this plat. Severn testified that Howard told him in the beginning that "there was no use in having a survey, as I would get the land in back of me." He did not dispute Howard's testimony that they had a conversation on the ground, where the existing lines, as shown by the fences and buildings, were plainly visible, and the extension had been staked out by the surveyor. In short, Howard showed Severn what he was to get, and Severn agreed to it. After Severn had signed the deed and agreement, he then for the first time sought to repudiate it.

Severn not only prevented his wife from signing the deed and agreement, but he refused to go through with the agreed adjustment of the boundary line, which was the only consideration for Howard's promise to convey

the "land in back." In the absence of any evidence of a confidential relation between Severn and Howard, Severn cannot insist on receiving a conveyance of any part of this land, except upon compliance with the terms of the offer. The parties were dealing at arms length, and Howard violated no duty to Severn in obtaining the conveyance of July 17, 1950, from the County Commissioners. Howard did not undertake to obtain a conveyance direct to Severn, but only to convey to Severn under the conditions stated.

On February 20, 1952, Severn and his wife brought an action of ejectment against the Howards, claiming that Howard had encroached upon the land acquired by them, under deed dated September 15, 1942, extending back to the parking lot owned by the County. There was a plea of not guilty and a judgment in favor of the plaintiffs. That decision is *res judicata* on the questions of the location of the true boundary line in lot 5, and also as to the right to possession of the land encroached upon. *Kiser v. Lucas,* 170 Md. 486, 492; *Brooke v. Gregg,* 89 Md. 234, 237. There was no plea on equitable grounds setting up the contention now raised, that Mrs. Severn was bound or estopped by the deed and agreement of August 11, 1950. It may well be that the adjudication, in legal effect, would forestall any subsequent claim of the Howards under that conveyance. Cf. *Ashman v. Ashman,* 201 Md. 445, 451. For present purposes it is sufficient to say that the adjudication did not decide, or purport to decide, the present controversy as to the "land in back," which depends upon the meaning to be given that phrase in the light of the surrounding circumstances. *Kiser v. Lucas,* supra, p. 494. Since the evidence clearly shows that the parties were bargaining with reference to existing lines, not to the lines ultimately determined, we find no breach of contract or inequitable conduct on Howard's part, in obtaining from the County Commissioners the deed of July 17, 1950, now under attack. Finding no evidence of fraud, misrepresentation or mis-

take in the obtention of that deed, we think the bill should have been dismissed.

*Decree reversed and bill dismissed, with costs.*